## Packard *v.* Pittsburgh Railways Company, Appellant.

Argued March 30, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*E. W. Langfitt*, with him *James R. Orr* and *J. R. Mc-Nary*, for appellant.

*Albert C. Hirsch*, with him *Cresswell S. Shumaker* and *Watson & Freeman*, for appellee.

OPINION BY MR. JUSTICE MAXEY, May 27, 1937:

In this negligence action liability was admitted by appellant and the only question submitted to the jury was the amount of damages recoverable. The jury returned a verdict for plaintiff in the amount of $21,000, which the court below reduced by remittitur to $16,000. Defendant has appealed, asserting that the evidence as to the injuries sustained by plaintiff failed to justify even the amount of the verdict as reduced, and that the court below abused its discretion in failing to require a further reduction or to grant a new trial in the alternative. This is the only question for review.

The accident occurred on April 6, 1934, when plaintiff was thirty-six years of age. He was one of seven passengers on a trolley car operated by appellant. Because of an obstruction ahead, the motorman was backing up the trolley, when another car rounded a curve and crashed into its rear. Such was the confusion which ensued that no one who testified was able to give a very clear account of the resulting damage. Plaintiff said that at the moment of impact he was occupying a seat near the rear of the car, but remembers nothing until after the accident, when he found himself sitting near the front alongside another passenger. He was able to leave the trolley car without assistance, however, and was taken to his place of business. By the time he reached his office he was in great pain and was forced to take a taxicab home. He remembers little if anything from the time when he arrived home until nearly a week later, when he was in a hospital, suffering severe pain in his neck and back. On this occasion he was a patient in the hospital for three weeks, under constant medical care. The evidence on his behalf indicated that his condition grew progressively worse. His vision was impaired, and his directional motor reflexes, as in trying to touch an object placed before him, became distorted. For some time he could not even feed himself. His attending physician encased his neck and back in a plaster cast, which he wore for six weeks. He was subject for a time to hallucinations and at all times to constant pain. He lost considerably in weight, and at first slept nearly all day, but since the first effects of his injury wore off, has not been able to sleep more than a few hours each night. Various treatments were prescribed, none of which brought permanent improvement.

Four months after the accident, in August, 1934, plaintiff endeavored to go back to work and he resumed his employment as commercial representative with the Western Union Telegraph Company in Pittsburgh. His superior in the company testified that formerly plaintiff

had maintained a high level of efficiency, but after the accident seemed utterly unable to apply himself or to grasp the problems involved in his daily work. His mental faculties appeared to have deteriorated. Finally the company had plaintiff examined by its physician, who reported him unfit for work. Plaintiff then entered another hospital, where he was treated for two weeks, and left supported by another cast, which he wore for some months. When this was removed, he was fitted with a leather and steel brace, which up to the time of trial he wore alternately with a stiff cloth collar, in which he appeared in court to testify. It was testified by his physician that it was essential for plaintiff to wear these devices, in order to avoid or minimize the constant pain to which he was subject, and to support his neck and head, which had a tendency to fall forward and to the side. Plaintiff still suffers pain or discomfort more or less continuously and is subject to spells of dizziness while walking or working. He has to wear glasses to correct his vision, which was formerly normal. There was tesimony of a poor heart condition existing since the injury and inflammation of the jaw requiring extraction of teeth. Apparently plaintiff obtains relief only from daily thermal ray treatment and massage. His mental condition is both erratic and to a certain degree neurotic.

The medical testimony, on both sides of the case, was abundant. No less than nine physicians and specialists in various branches of medical science examined or treated plaintiff. Numerous X-ray photographs were taken of plaintiff's neck and back. The diagnosis advanced by plaintiff's physicians was that the injury to his head, neck or back resulted from a blow which fractured a cervical vertebra or, less probably, caused a concussion, and that this developed into a traumatic or neurological condition affecting his entire nervous system, although the physical indicia of the original injury have disappeared, at the present time, to a large extent

if not completely. They testified that arthritis of the spinal column has now set in, with the result that the pressure upon the nerves of his neck and back has not been diminished. In their opinion, plaintiff will continue to suffer constant pain, marked by a general physical, and perhaps also, to a limited extent, mental debility, as a permanent characteristic. One of plaintiff's doctors stated that he has lost two-thirds of his efficiency as a worker, and that this condition may continue indefinitely; another testified that in all probability his efficiency will never in the future exceed fifty or sixty per cent. of what it was prior to the accident. The prognostication of plaintiff's future capacities was poor. There was ample evidence, if believed, of the uncertainty of his ability to earn a living comparable with his earning power in the past.

Appellant by expert testimony contradicted much of the foregoing. It sought to show that plaintiff's present physical condition, aside from the subjective elements of pain and nervousness, is one of vigor and health, that no fracture or concussion was involved, and that no injury of a permanent nature was proved. The difficulty with appellant's position is that the jury obviously believed the evidence submitted by plaintiff and rejected that offered by appellant. On the voluminous record which confronts us we cannot declare that it was not justified in doing so, or that the court below abused its discretion in refusing to further reduce the verdict or to award a new trial. This we must necessarily find, if the judgment entered below is not to stand: *International Forge Co. v. Reeves & Co.*, 264 Pa. 431, 107 A. 837. Plaintiff's expert testimony was not inherently improbable, nor inconclusive in character. If, on a comparative estimate, appellant's witnesses preponderated in the quality or trustworthiness of the evidence which they gave, this alone would not suffice to overthrow the verdict of the jury or the discretion of the court below: *Coyne v. John Gibbons Coal Co.*, 314 Pa. 502, 172 A. 653.

We cannot say that the amount to which the court below reduced the verdict was disproportionate to the pecuniary losses shown, both past and future. Hospital and medical expenses, not questioned by appellant, totaled nearly $3,000. Actual loss of earnings, up to the time of trial, reached about the same figure. Probable permanence of injury and a proper allowance for the pain and discomfort to which plaintiff was subjected may well make up the difference of $10,000. Plaintiff's salary was in the neighborhood of $1,700 a year; his earning prospects before the injury were good and his life expectancy considerable. We agree that the original verdict was excessive, but the reduction required by the court below was within the limits of a fair discretion. To reduce it below the present figure would be to substitute our discretion for that reasonably exercised by the court in banc, and this we will not do: *King v. Equitable Gas Co.,* 307 Pa. 287, 161 A. 65; *Schumacher v. Reading Transportation Co.,* 319 Pa. 254, 178 A. 670; *Majewski et al., v. Lempka et al.,* 321 Pa. 369, 183 A. 777.

The judgment is affirmed.